**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin M. Herrera, | No. CV-11-2460-PHX-LOA |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

On May 7 and May 9, 2012, Kevin Herrera ("Plaintiff"), through his counsel, filed his opening and amended opening brief, respectively, requesting this Court reverse the decision of the Commissioner of Social Security ("Commissioner") who found Plaintiff was not disabled under the Social Security Act ("Act"). (Docs. 22, 25) The Commissioner filed his opposition on June 4, 2012, and a Notice of Filing of Supplemental Authority on June 28, 2012.[1] (Docs. 27-28) Plaintiff did not file a reply. Plaintiff requests the Court reverse the decision and remand for an award of disability benefits. Alternatively, Plaintiff requests the Court to reverse the decision and remand for a new decision in accordance with proper legal principles. (Doc. 25)

---

[1] On December 5, 2012, the Court provided Plaintiff with an opportunity to respond to the Commissioner's Notice of Filing Supplemental Authority. (Doc. 29) Plaintiff did not file a response, but the Commissioner filed a response to the Court's order. (Doc. 30)

**I. Procedural History**

Plaintiff filed an application for disability benefits under the Act on March 19, 2009, for a disability beginning July 21, 2008 and continuing to the present. (Doc. 18-6 at 2-3, Tr. 95-97[2]) His application was denied at every stage of the process: initially on March 17, 2009, Tr. 58; on reconsideration on October 30, 2009, Tr. 59; and after an administrative hearing held on May 18, 2010, before the Administrative Law Judge ("ALJ"), Ronald C. Dickinson, Tr. 33-55. On July 22, 2010, the ALJ issued a written decision, finding that, although Plaintiff had some impairments, they did not meet the criteria for an award of disability benefits under the Act. (Tr. 13-28, 19) The ALJ credited the vocational expert's testimony that "there are jobs that exist in significant numbers in the national economy that the claimant could perform." (Tr. 27) Plaintiff timely appealed the ALJ's decision to the Appeals Council of the Office of Hearings and Appeals,[3] and, on October 13, 2011, the Appeals Council upheld the ALJ decision on the ground Plaintiff did not present a basis for reversing the ALJ's decision. (Tr. 1-5) At that point, the ALJ's decision became final.

Having exhausted the administrative review process, Plaintiff appealed the Commissioner's final determination to this District Court pursuant to 42 U.S.C. § 405(g), filing a timely Complaint on December 12, 2011. (Doc. 1) Plaintiff alleges he is disabled within the meaning of the Act and has been unable to engage in any employment since July 21, 2008. (*Id.*) He further alleges that, on July 22, 2010, the ALJ erroneously decided that Plaintiff was not entitled to a continuous period of disability benefits under the Act. (*Id.*)

The parties consented to proceed before a United States magistrate judge on February 3, 2012 pursuant to 28 U.S.C. § 636(c). (Doc. 16)

**II. Factual Background**

    **A. Plaintiff**

---

[2] Citations to "Tr." are to the administrative transcript; doc. 18.

[3] As will be further discussed herein, Plaintiff submitted evidence to the Appeals Council that was not before the ALJ.

- 2 -

1    Plaintiff was born on March 4, 1975. He was 33 years old on the alleged disability
2 onset date of July 21, 2008. (Tr. 27, 40-41) Plaintiff has a high school education and,
3 according to the vocational expert, has past relevant work as "a fuel system mechanic, a
4 skilled position at a medium level of exertion; a military police officer, a semi-skilled
5 position at a medium level of exertion; and a department store customer service
6 representative, a semi-skilled position at a light to medium exertion level." (*Id.*) Plaintiff
7 served in the Air Force for nine years and the Arizona National Guard for six years. (Tr. 41)
8 He was injured in combat in Iraq in October 2005 when a roadside bomb exploded behind
9 the vehicle he was riding. (Tr. 44-45) Plaintiff returned home from Iraq in February 2006.
10 (Tr. 44)

11    Between 2006 and July 21, 2008, the onset date of his alleged disability, Plaintiff
12 underwent several medical procedures which are discussed herein.

### B. Medical Evidence Regarding Physical Impairments

14    Plaintiff testified that initially he was diagnosed with cubital tunnel syndrome[4] in his
15 left arm that occurred as a result of the explosion. (Tr. 44, 47) This condition improved. (Tr.
16 47) Plaintiff states that he had continuing back pain that was aggravated by combat action
17 and participation in the National Guard. (Doc. 25 at 3) He was eventually discharged from
18 the military in July 2008 "with diagnoses of degenerative disc disease and mild to moderate
19 arthritis in the cervical and thoracic spine." (*Id.*) (citing Tr. 45-46) Plaintiff alleges he
20 continues to have pain in his upper back and neck and feels he is unable to sit or stand for
21 prolonged periods. (*Id.*) (citing Tr. 46-48) Plaintiff further states that in addition to his
22 physical problems, he was diagnosed with post-traumatic stress disorder ("PTSD") around
23 September 2006. (*Id.* at 4) (citing Tr. 46) He testified that until 2008, he was on medication
24 including anti-depressant medication. (*Id.*)

25    Plaintiff indicates he was seen professionally by Dr. Russell Lemmon, a family

---

[4] Cubital tunnel syndrome is "[a] form of mononeuropathy due to compression or other injury of the ulnar nerve at the elbow. Symptoms of the cubital tunnel syndrome may include pain and numbness along the ulnar aspect (the little finger side) of the hand and forearm, and weakness of the hand." www.medterms.com (last viewed December 29, 2012)

- 3 -

1 practitioner, at the Luke Air Force Base Hospital on June 14, 2006, complaining of neck pain
2 and arm numbness. (Tr. 250) Dr. Lemmon's evaluation revealed "full, non-painful ranges
3 of motion and no radicular symptoms." (Doc. 25 at 5) (citing Tr. 251) Plaintiff returned to
4 Dr. Lemmon on June 29, 2006, complaining of upper and lower back pain, but noted that
5 he was having "good results" from the back exercises. (Tr. 248)

6 Nearly a year later, in May 2007, Dr. Lemmon referred Plaintiff for an magnetic
7 resonance imaging test ("MRI") of the thoracic and cervical spine. (Tr. 273-76) The MRI
8 revealed signs of early disc desiccation and other mild to moderate issues with the spine.
9 (Tr. 273-74) Additionally, in 2007 and 2008, Plaintiff stated that he underwent a course of
10 pain management treatment with Dr. Kerry Ando and Dr. Charles Dries based on a diagnosis
11 of "cervicalgia" and history of cervical spondylosis.[5] (Tr. 252-70) Plaintiff continued treating
12 with these doctors through 2008. In the interim, on or before March 2007, Plaintiff was also
13 seen by Andrew Gorman, D.O., in the neurology clinic at Luke Air Force Base. (Tr. 233-34)
14 Dr. Gorman noted Plaintiff's electromyographic diagnostic test ("EMG") revealed his "upper
15 extremity was completely normal including needle examination in the left arm" and that the
16 "MRI of the cervical spine results were reviewed which were pretty much unremarkable.
17 He had a very mild disk bulge at C5-C6 without any neural foraminal narrowing or spinal
18 stenosis." (Tr. 234 and 232) A MRI of the left elbow was normal. Upon a follow up at
19 Banner Thunderbird Pain Management Program on December 4, 2007, Plaintiff reported he
20 had communicated with a neurosurgeon "who feels there is nothing else that needs to be
21 done or can be done surgically or through injections." (Tr. 270)

22 In early 2008, Plaintiff underwent a series of medical examinations as part of a
23 military physical evaluation. After the examinations, it was determined that, on March 3,
24 2008, Plaintiff did not meet the retention standards with respect to the cervical and thoracic
25 degenerative disc disease and his PTSD; however, Plaintiff did meet the retention standards
26 for left cubital tunnel syndrome, intermittent right knee pain and hypertriglycerides. (Tr. 352,
27

28     [5] Cervical spondylosis is the "[d]egeneration of the disc spaces between the vertebrae" of the cervical spine. www.medterms.com (last viewed December 29, 2012)

1 360)

2       Plaintiff was treated by Ted Faro, D.O., and Matthew Duke, D.O., Southwest Family
3 Practice, Buckeye, Arizona, family practitioners, on September 16, 2008, for neck and back
4 pain. (Tr. 558; doc. 18-14 at 13) Various diagnoses were made and treatments provided to
5 Plaintiff as described in Plaintiff's Opening Brief, doc. 25 at 7, and the Transcript at
6 approximately pages 550-650. Additionally, Dr. Duke submitted a questionnaire, dated July
7 26, 2011, to the Appeals Council, in which Dr. Duke diagnosed Plaintiff with cervical
8 degenerative joint disease and expanded on his findings with respect to Plaintiff. (Tr. 692-
9 93) From June 9, 2009 to March 12, 2010, Plaintiff was also treated by pain management
10 specialists for neck pain. (Tr. 614-20)

11       With respect to mental health treatment, Plaintiff states that he was treated by
12 psychiatrist David Archibald on September 10, 2007 for anxiety and depression. (Tr. 434-
13 35) In November 2007, Plaintiff was diagnosed with Adjustment Disorder with anxiety and
14 depressed mood and PTSD. (Tr. 417)

15       On April 8, 2010, Plaintiff underwent an orthopedic examination by Dr. Michelle
16 Kasparian at the VA Medical Center. (Tr. 625-48) This examination was performed in
17 connection with Plaintiff's application for Social Security disability benefits. (*Id.*) Plaintiff
18 indicates Dr. Kasparian found Plaintiff's condition imposed "severe" effects on his ability
19 to do certain standard activities. (Tr. 646-47) Plaintiff submitted more recent notes from his
20 chart at the VA Medical Center to the Appeals Council for review. (Tr. 667-89) An
21 examination revealed Plaintiff did not meet the criteria to establish he suffered from PTSD,
22 but anger management treatment was recommended. (Tr. 686)

23       In connection with his Social Security disability claim, Plaintiff was referred to
24 Jacqueline Worsley, Psy.D., a consultative licensed psychologist for a State of Arizona
25 Agency, for a psychologist evaluation regarding Plaintiff's mental status. (Tr. 567-72; doc.
26 18-14 at 22-27) After the February 13, 2009 evaluation, Dr. Worsley diagnosed Plaintiff
27 with chronic PTSD. (Tr. 570) Plaintiff was also referred to Ashley A. Bittle, Psy.D., a
28 clinical psychologist for a State Agency, for a psychiatric evaluation. (Tr. 579-86) On

1 August 27, 2009, Dr. Bittle noted that Plaintiff suffered from moderate PTSD and depressive
2 disorder. (Tr. 584)

3 The State Agency further referred Plaintiff to an internist, Jean Prieve, D.O., in
4 Ogden, Utah, who examined Plaintiff on February 28, 2009 for pain in his upper back and
5 neck. (Tr. 574-77) Although Dr. Prieve diagnosed some issues with the neck and back, he
6 found that Plaintiff's impairments "will not impose any significant limitations for 12
7 continuous months." (Tr. 577)

8 Plaintiff was referred to yet another doctor, Elizabeth Ottney, D.O., a Board certified
9 family practitioner, for a consultive examination on September 21, 2009. (Tr. 602-05). Dr.
10 Ottney concluded that she "did not believe this claimant's history of degenerative disc
11 disease or cubital tunnel syndrome causes any significant work-related restrictions at this
12 time." (Tr. 604) Dr. Ottney's report states:

> This claimant does not appear to have any limitations of sitting, hearing, speaking, seeing, stooping, crouching, crawling, climbing, fingering, grasping, reaching, lifting, carrying, standing, or walking. This claimant does not require any environmental restrictions or assistive devices at this time.
>
> The medical examination process was explained to the claimant and he understands that no patient-treating physician relationship exists and that a report will be forwarded to the Social Security Administration. *The above history was provided by the claimant and the resultant impressions are based on the history provided by the claimant, the medical record provided, test results, and physical findings.* My opinion is based on reasonable medical probability and is completely independent of the Social Security Administration. My opinions expressed here do not constitute a recommendation that specific claims or administrative actions be made or denied.

21 (Tr. 604) (emphasis added).

22 **C. The Vocational Expert's Testimony**

23 David Janus, a vocational expert, testified at the May 18, 2010 administrative hearing.
24 (Tr. 50-52) Mr. Janus testified to Plaintiff's prior work history and Plaintiff's prospective
25 work ability. (*Id.*)

26 **D. Other Hearing Testimony**

27 In addition to Plaintiff and the vocational expert, Plaintiff's wife, Kimberly Herrera,
28 also testified at the hearing. (Tr. 53-55) Kimberly Herrera testified she and Plaintiff had been

1 married since January 24, 2009. (Tr. 53) She further testified to her personal daily 2 experiences with Plaintiff and Plaintiff's limitations due to his physical impairments and 3 depression. (Tr. 53-54)

4 The ALJ produced his written decision, which will be addressed below, on July 22, 5 2012. (Tr. 16-28; doc. 18-3 at 17-29)

### III. Applicable Legal Standards and Arguments

#### A. Standard of Review

A district court must affirm the Commissioner's findings if they are supported by substantial evidence and are free from legal error. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (*per curiam*); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1997). Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). In determining whether substantial evidence supports a decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Sandgathe,* 108 F.3d at 980 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). "When the evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

#### B. The Sequential Evaluation Process

A "disability" is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 33 (2003). An individual is disabled if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

1  any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.
2  § 423 (d)(2)(A); *see also Mayes*, 276 F.23d at 460. The claimant bears the initial burden of
3  proving disability. 42 U.S.C. § 423 (d)(5); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
4  2005). "A determination of whether an individual's impairments are of a sufficient medical
5  severity to form the basis of eligibility for disability insurance benefits turns on the combined
6  effect of all of the individual impairments." *Mayes*, 276 F.3d at 460 (citing 42 U.S.C. §
7  423(d)(2)(B) (Supp. 2001)). If the claimant shows he is unable to perform past relevant work,
8  the burden shifts to the Commissioner to demonstrate that the claimant "can perform other
9  substantial gainful work that exists in the national economy." *Takcett v. Apfel*, 180 F.3d
10 1094, 1098 (9th Cir. 1999).

11 An ALJ determines an applicant's eligibility for disability insurance benefits by
12 following the five steps listed below:

13 (1) determine whether the applicant is engaged in 'substantial gainful activity';

14 (2) determine whether the applicant has a 'medically severe impairment or combination of impairments';

15
16 (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

17
18 (4) if the applicant's impairment does not equal one of the 'listed impairments,' determine whether the applicant has the residual functional capacity to perform his or her past relevant work;

19
20 (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant 'is able to perform other work in the national economy in view of his [or her] age, education, and work experience.'

21
22 *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). The
23 claimant bears the burden of proof for steps one through four, but at the fifth step, the burden
24 of proof shifts to the Commissioner. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th
25 Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).

**C. The ALJ's Decision**

26
27 Applying the five-step analysis, the ALJ found that: (1) Plaintiff has not engaged in
28 substantial gainful activity since July 21, 2008, Tr. 18; (2) Plaintiff has a severe impairment when considered in combination with the other impairments, *id.*; and (3) Plaintiff's

- 8 -

1 impairment or combination of impairments does not meet or medically equal the criteria of
2 an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, tr. 19.  At steps four and
3 five, the ALJ concluded "after careful consideration" that although Plaintiff is unable to
4 perform his past relevant work, he "has the residual functional capacity to perform light work
5 with restrictions" that exist in significant numbers in the national economy. (Tr. 21-27) This
6 conclusion included the following limitations: "claimant cannot crawl, crouch, climb, squat,
7 or kneel. He is unable to use his upper extremities for work above shoulder level. The
8 claimant's mental impairments limit him to unskilled work. The claimant should not be
9 exposed to loud noises." (Tr. 21)  In so finding, the ALJ concluded that Plaintiff was not
10 disabled under the Act. (Tr. 28)

### D. The Appeals Council Decision

12 Upon appeal by Plaintiff, the Appeals Council, on October 13, 2011,  issued a
13 decision denying Plaintiff's request for review. (Tr. 1) The Appeals Council stated that "[i]n
14 looking at your case, we considered the reasons you disagree with the decision and the
15 additional evidence listed on the enclosed Order of the Appeals Council." (*Id.*)  The Appeals
16 Council, however, "found that this information does not provide a basis for changing the
17 [ALJ's] decision." (Tr. 2) This additional evidence included, *inter alia,* the impairment
18 Questionnaire from Dr. Duke, dated July 26, 2011. (Tr. 4)

### E. Plaintiff's Arguments on Appeal and Controlling Legal Authority

20 In support of his request for review of his claim for disability benefits, Plaintiff
21 presents the following claims of error:

22 1. The ALJ erred in refusing to credit the opinion of the treating physician, Dr. Duke;
23 and

24 2. The ALJ erred in finding that Plaintiff's subjective complaints of disabling
25 limitations were not credible or that determination was not based on legal adequate rationales
26 or supported by substantial evidence.

27 The Commissioner disputes Plaintiff's assertions of error.

28

## IV. Analysis

### A. Determination Regarding Presumptive Disability

Based on the standards set forth above, the ALJ ultimately found that Plaintiff was not disabled under the Act. This decision was based, in part, on the ALJ's finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 25) The ALJ noted that "[i]n addition, there is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggest that the symptoms may not have been as limiting as the claimant has alleged in connection with this application." (*Id.*) The ALJ continued that "[b]ased on the testimony of the vocational expert . . . considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to work in jobs that exist in significant numbers in the national economy," Plaintiff "would be able to perform the requirements of representative unskilled jobs at the light exertional level." (Tr. 28) The ALJ accepted the vocational expert's list of jobs Plaintiff would be capable of performing, including a cashier, assembler, and parking lot attendant. (*Id.*)

### i. Rejection of Dr. Duke's Testimony

Plaintiff's first claim of error is that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Duke.

"The ALJ must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). If a treating or examining physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, that physician's opinion is given controlling weight. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §404.1527(d)(2); Social Security Ruling (SSR) 96-2p. While not bound by a medical expert opinion, the ALJ must provide "'specific and legitimate' reasons for rejecting the opinion of a treating physician." *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation

- 10 -

1  thereof, and making findings." *Tommasetti*, 533 F.3d at 1041 (citation omitted). Furthermore,
2  "[an] ALJ need not accept the opinion of any physician, including a treating physician, if that
3  opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray v.*
4  *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  If the treating physician's
5  opinion is uncontroverted, the ALJ's reasons for rejecting the opinion must be clear and
6  convincing. *Smolen*, 80 F.3d at 1285.      In support of his argument, Plaintiff cites to three
7  letters written by Dr. Duke, at Plaintiff's request, affirming Plaintiff "[h]as severe cervical
8  spine pain. He sustained injuries while serving in Iraq." (Tr. 622; doc. 18-14 at 77)  In the
9  first letter, dated April 5, 2010, Dr. Duke added Plaintiff is "unable to work in any gainful
10 manner." (*Id.*)  Dr. Duke further wrote Plaintiff "has been disabled since July 2008." (*Id.*)
11 In the second letter, dated April 26, 2010, Dr. Duke indicated Plaintiff "suffers from PTSD[]"
12 and he is "only able to treat Plaintiff with medications[,]" and Plaintiff "would be much
13 better served to have a full scope of care for PTSD including counseling, behavioral
14 modification and psychotherapy." (Tr. 610; doc. 18-14 at 65)  Dr. Duke's third letter, dated
15 May 17, 2010, is essentially an expansion on the first letter, dated April 5, 2010. (Tr. 650;
16 doc. 18-14 at 105) This last letter included additional information that, according to Dr.
17 Duke, Plaintiff's underlying diagnosis "is facet joint arthritis with narrowing of the foraminal
18 canal" which "leads to daily pain with frequent radicular pains in his arms and hands." (*Id*.)
19 Dr. Duke added that Plaintiff was treated for pain management, including vicodin and flexeril
20 which "cause some 'mental slowing' and can restrict [Plaintiff's] ability to think quickly as
21 might be necessary in a work place." (*Id*.) Finally, Dr. Duke opined that Plaintiff "will not
22 be able to work in the next year due to pain" and"[h]e should remain on disability and receive
23 benefits." (*Id.*)

24      Plaintiff further relies on a completed Cervical Spine Impairment Questionnaire, dated
25 July 26, 2011, completed by Dr. Duke and submitted for the first time to the Appeals Council
26 by letter from Plaintiff's counsel.[6] (Tr. 691-98; doc. 18-15 at 42-49) In the Questionnaire,
27
28      [6] As mentioned previously, in footnote 1, the Commissioner filed a Response to the
Court's Order on December 12, 2012. (Doc. 30). In the Response, the Commissioner stated

- 11 -

1  Dr. Duke noted that Plaintiff was in "constant pain," his condition was "not improving with
2  time," and he suffered from "pain, arm weakness, [and] fatigue." (Tr. 691-93)  Dr. Duke
3  further provided his estimates of Plaintiff's functional limitations in a normal work week,
4  such as sitting (0-1 hours); standing (1 hour); and lifting or carrying (up to ten pounds,
5  occasionally). (Tr. 695)  In addition, Dr. Duke indicated in the Questionnaire Plaintiff had
6  marked to moderate limitations in the use of his hands, arms and grasping. and indicated
7  Plaintiff would need to take unscheduled breaks every 30 minutes for approximately five to
8  ten minutes. (Tr. 697) According to the Questionnaire, Plaintiff's care is managed with pain
9  management. (*Id.*)

10  The Commissioner argues that the ALJ properly discredited Dr. Duke's April and
11  May 2010 letters because they were conclusory, brief and unsupported by the record. (Doc.
12  27 at 19) The Commissioner further argues that Dr. Duke's statements were contradicted by
13  the opinion of Dr. Ottney who concluded that she did not believe that Plaintiff's "history of
14  degenerative disc disease or cubital tunnel syndrome causes any significant work-related
15  restrictions at this time. This claimant does not appear to have any limitations of sitting,
16  hearing, speaking, seeing, stooping, crouching, crawling, climbing, fingering, grasping,
17  reaching, lifting, carrying, standing, or walking." (Tr. 604) The Commissioner additionally
18  argues that Dr. Duke's opinion that Plaintiff was "disabled" and "unable to work" pertain to
19  the ultimate issue of liability which is reserved for the ALJ to determine. (Doc 27 at 18-19)
20  Ultimately, the ALJ rejected the opinion of Plaintiff's treating physician, Dr. Duke,
21  that Plaintiff "is unable to work in any gainful manner due to chronic cervical spine pain

---

that since filing the Notice of Supplemental Authority, doc. 28, he has further evaluated his position with respect to the new authority and believes that the Court should consider the new evidence submitted to the Appeals Council, but not the ALJ, under sentence four rather than sentence six of 42 U.S.C. § 405(g). The Commissioner maintains, however, that the new evidence does not undermine the substantial evidence supporting the ALJ's decision and, therefore, remand is not warranted.  As will be discussed herein, the Court has considered and reviewed the evidence submitted to the Appeals Council and concluded that it is not sufficient to warrant remand in this action.

- 12 -

1  with frequent radicular symptoms." (Tr. 27[7]) The ALJ concluded that Dr. Duke "apparently
2  relied quite heavily on the subjective report of symptoms and limitations provided by
3  [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff]
4  reported." (Tr. 26). The ALJ substantiated these findings elsewhere in his decision that
5  Plaintiff's subjective complaints were not fully confirmed by objective findings in the
6  record. (*Id.*[8])

7  The Court finds that the ALJ has met the standard of sufficiently setting forth specific
8  and legitimate reasons, supported by substantial evidence, for rejecting Dr. Duke's opinion.
9  "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a
10 claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533
11 F.3d at 1041; *Bray*, 554 F.3d at 1228. This is precisely what the ALJ did in this case. First,
12 the ALJ found that Dr. Duke appeared to rely "quite heavily" upon the subjective complaints
13 of Plaintiff. Additionally, the ALJ noted that Plaintiff's subjective complaints were not fully
14 confirmed by the objective medical findings in the record. (Tr. 26) The ALJ then discussed
15 other evidence in the record, including the testimony of Plaintiff's wife, non-treating sources,
16 and consultative examiners. (*Id.*) Moreover, Dr. Duke's letters were "brief, conclusory, and
17 inadequately supported by the clinical findings." *Bray,* 554 F.3d at 1228. The entire letter

---

19 [7] The record reveals the first physician Plaintiff saw as a new patient at the Southwest
20 Family Practice was Dr. Faro on September 16, 2008 "for complaints of a rash over the body" and neck and back pain Plaintiff had been experiencing for a few days. Plaintiff
21 informed the office he "was lifting a lot recently." (Tr. 558) Dr. Faro saw Plaintiff again on
22 November 4, 2008. (Tr. 551) However, it was not until April 2010 that Dr. Duke began writing letters for Plaintiff "affirming" his spinal pain due to injuries sustained while in Iraq
23 in 2005. (Doc. 25 at 3) Although the ALJ accepted Plaintiff's characterization of Dr. Duke
24 as Plaintiff's treating physician, this Court is not so readily convinced. First and perhaps foremost, it is not clear when Dr. Duke first examined Plaintiff, yet in 2010, Dr. Duke states
25 that Plaintiff was disabled since 2008. (Tr. 622) Assuming Dr. Duke qualifies as a "treating physician," the Court nonetheless finds that the ALJ properly set forth specific and legitimate
26 reasons, supported by substantial evidence, for rejecting Dr. Duke's opinion.

27 [8] The ALJ additionally did not give Plaintiff's wife's testimony "significant weight"
28 because it was contradicted by Plaintiff's own reports in the record. (Tr. 26). The Court will not address this issue as it is not an issue raised by Plaintiff.

1 from Dr. Duke, dated April 5, 2010, states:

> The above patient [Kevin Herrera] has asked me to provide a letter on their [sic] behalf. Mr. Herrera has service cervical spine pain. He sustained injuries while serving in Iraq. He is unable to work in any gainful matter. He has a specialist for pain management and a neurologist. He has undergone epidural steroid injections, radio frequency ablation and trigger points.
>
> He has been disabled since July 2008. He will not be able to work in the next year due to his pain. He should remain on disability and receive benefits. His records are available for review.

(Tr. 622) Although Dr. Duke's two subsequent letters provided some additional information, this letter is minimal at best and does not demonstrate it was based on clinical findings or even that Dr. Duke personally treated Plaintiff. On this record, the Court finds that the ALJ reasonably rejected Dr. Duke's opinion.

As noted above, there was additional evidence submitted to the Appeals Council which was not submitted to the ALJ. Nevertheless, the Court has considered this evidence in light of the recent decision in the United States Court of Appeals for the Ninth Circuit, *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (holding that evidence submitted for first time to Appeals Council, which the Council considers in denying review of ALJ's decision, is part of the administrative record which the district court must consider in assessing whether the Commissioner's decision is supported by substantial evidence). The Court considers this after-hearing evidence as part of the "whole record." *Id.* at 1162. In considering the "new" evidence, the Court finds that it does not change the conclusion that the ALJ's decision is supported by substantial evidence. As with the letters written by Dr. Duke, the new questionnaire does not override the Court's finding that the ALJ properly rejected Dr. Duke's testimony based upon the fact that his opinions were brief and conclusory. In addition, his opinions were not supported by identified clinical findings. There is little to no explanation why or how Dr. Duke reached his opinions. Moreover, as discussed above, the ALJ found contradictory evidence in the record, *e.g.,* the opinion of Dr. Ottney that Plaintiff does not suffer from "significant work-related restrictions at this time." (Tr. 604)

Finally, "[i]t is clear that it is the responsibility of the ALJ, not the claimant's

physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Dr. Duke offered a legal finding that Plaintiff was disabled, but it is not a physician's role to be the judge and fact finder under the Act. Accordingly, Dr. Duke's legal conclusion was appropriately rejected.

### ii. Credibility Determination of Plaintiff

Plaintiff's second claim of error is the ALJ improperly found Plaintiff's testimony not credible and the ALJ's decision is not based on proper legal principles or supported by substantial evidence.

The ALJ is responsible for resolving conflicts, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d 1035 at 1039; *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). A two-step analysis is used "to assess subjective testimony where, under step one, the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti*, 533 F.3d at 1039 (citation omitted). "If the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.*

There are many factors an ALJ may properly consider in weighing a claimant's credibility, including, but not limited to:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;
>
> (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;
>
> (3) the claimant's daily activities.

*Smolen*, 80 F.3d at 1284; *see also Bunnell,* 947 F.2d at 346; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 at n. 3 (9th Cir. 2010). If sufficient evidence supports the ALJ's determination, a district court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). Moreover, if a reasonable mind could understand the evidence to support either outcome, a district court must defer to the ALJ's decision. *Batson*

1  *v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). If, on the record as a whole, 2  substantial evidence supports the ALJ's decision and it is free from legal error, a district 3  court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C.A. 4  § 405(g). Although an ALJ may find a claimant's allegations of pain severity not credible, 5  the ALJ must make specific findings which support this conclusion. *Bunnell*, 947 F.2d at 6  345. The findings must be sufficiently specific to allow a reviewing court to determine that 7  the decision was made on permissible grounds and not arbitrarily discredited. *Id.* at 345-46. 8  Finally, a district court may not reverse an ALJ's decision for harmless error, which exists 9  when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate 10 nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) 11 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

12      Here, Plaintiff discounts all three of the ALJ's proffered reasons for rejecting 13 Plaintiff's testimony. First, Plaintiff asserts that the ALJ's statements regarding Plaintiff's 14 daily living activities as insufficient findings. The ALJ concluded that Plaintiff's daily 15 activities are not as limited as one would expect under the circumstances. Plaintiff disputes 16 this and instead, according to Plaintiff, none of the activities cited by the ALJ bear 17 reasonably upon Plaintiff's ability to perform the light exertional requirements of the work 18 he was found capable of performing.

19      Second, Plaintiff objects to the ALJ's characterization of the treatment plan as 20 "routine and/or conservative in nature." (Tr. 25) Plaintiff alleges this characterization is 21 completely at odds with the record. Plaintiff contends he received three types of injections, 22 radio ablation therapy, acupuncture, and electrical stimulation, in addition to the 23 "conservative" treatment accepted by the ALJ. Plaintiff further alleges that the ALJ's 24 inference that "anything less than surgery undermines his claim of disabling pain finds 25 neither logical nor legal support." (Doc. 25 at 17)

26      Plaintiff further contends that the ALJ erroneously stated that "although the claimant 27 has received various forms of conservative treatment for the allegedly disabling symptoms, 28 which would normally weigh somewhat in claimant's favor, the record also reveals that the

1  treatment has been generally successful in controlling those symptoms." (Tr. 25) Plaintiff
2  alleges this inference is unjustified and fails to account for the repeated treatment notes that
3  refer to the temporary nature of the relief attained from the treatment. Plaintiff finds error in
4  the ALJ's failure to specify any duration of his relief, which according to Plaintiff has never
5  been for more than several months. This, according to Plaintiff, is not based on legally or
6  logically sound reasoning and therefore should not be upheld.

7         The Commissioner does not dispute that Plaintiff has physical and mental limitations.
8  (Doc. 27 at 13) Rather, it is the Commissioner's position that the ALJ's finding that Plaintiff
9  is not precluded from all forms of work and Plaintiff's assertions to the contrary are not
10 credible is supported by substantial evidence and free from error. (*Id.*)  The Commissioner
11 further contends that the ALJ 's findings were sufficiently specific to assure the Court that
12 the ALJ's decision was not arbitrary. The Commissioner cites four specific findings by the
13 ALJ that support his position, including: 1) the inconsistency between Plaintiff's allegations
14 of disabling mental impairments and other statements made by Plaintiff in which he denied
15 or reported only mild depression, citing Tr. 23, 25, 331, 374, 380, 508, 567, 633; 2)
16 Plaintiff's response and acknowledgment of improvement with conservative treatments,
17 citing Tr. 19, 22, 25-26, 231-34, 252, 330-31, 616, 617; 3) Plaintiff's lack of complete
18 compliance with his treatment regimen, citing Tr. 23, 25, 260, 330-31, 447, 567, 612-15,
19 617; and 4) the inconsistency of Plaintiff's allegations of disabling limitations and his actual
20 daily activities, including self-care, caring for several children, cooking, cleaning, laundry,
21 reading, working on the computer, attending on-line classes and driving, citing Tr. 20, 22,
22 25, 41, 150-52, 603. Additionally, the Commissioner asserts that at the time Plaintiff was
23 discharged from active duty and joined the National Guard, he was assigned only a 10
24 percent impairment rating for his back and neck by the National Guard, citing Tr. 42, 45-46.
25 The Commissioner argues Plaintiff is in essence asking this Court to re-weigh the evidence
26 submitted to the ALJ, which is not the Court's role.

27        Mindful of the above-mentioned legal principles, the Court finds that the ALJ's
28 decision rejecting Plaintiff's testimony as credible is supported by the record and sufficient

specific findings were made. Although Dr. Duke's opinion is not uncontroverted, thereby negating the need for clear and convincing support, the Court assumes *arguendo* Plaintiff met the threshold prong of producing medical evidence of an impairment or impairments sufficient to require the ALJ to offer specific, clear and convincing reasons for rejecting the credibility of Plaintiff's testimony. The Court finds the ALJ provided several specific, clear and convincing reasons supported by the evidence for rejecting Dr. Duke's testimony.

First, the ALJ found that "[a]fter careful consideration of the evidence, [the ALJ found] that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment."[9] (Tr. 25) The ALJ set forth several additional reasons for rejecting Plaintiff's credibility, such as Plaintiff's description of his daily activities, including, but not limited to, laundry cleaning, cooking, and family activities, which, according to the ALJ, "are not limited to the extent one would expect, given the complaints of disabling symptoms and disability." (*Id.*) The ALJ further relied on Plaintiff's conservative nature of treatment, noting that it has been "generally successful" in controlling Plaintiff's symptoms and that Plaintiff reported improvement with the pain from said treatments. (*Id.*). *See also Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ further explained that there is evidence to show that Plaintiff has not been fully compliant with taking his prescribed medications, which, according to the ALJ, "suggests that the symptoms may not have been as limited as [Plaintiff] has alleged in connection with this application." (*Id.*) *See also Molina v. Astrue*, 674 F.3d 1104, 1113-14) (9th Cir. 2012) (noting an ALJ may rely on unexplained or inadequately explained failure to seek treatment or follow prescribed treatment to support finding of no disability). Notably, there was no

---

[9] Residual functional capacity is "what the individual can still do despite [the] limitations." *Mayes*, 276 F.3d at 460 (citing 20 C.F.R. § 404.1545 (2000)).

evidence of any adverse side effects from the use of the prescribed medications. (*Id.*)

The ALJ separately considered Plaintiff's allegations of psychological impairments. The ALJ noted that Plaintiff was not consistent with reports of depressive symptoms, "which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date." (Tr. 27) The ALJ observed the inconsistency between Plaintiff's wife's testimony of depression with what Plaintiff reported to Dr. Worsley in February 2009. (*Id.*) Again, as with the physical symptoms, the ALJ noted the "significant periods of time since the alleged onset date during which [Plaintiff] has not taken any medication for those symptoms." (*Id.*) Likewise, the ALJ wrote that, as with the physical symptoms, his "depressive symptoms as well as his anxiety, nightmares, and flashbacks had been reduced with treatment." (Tr. 26)

With respect to daily activities, "if a claimant is able to spend a *substantial part* of [the] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Vertigan*, 260 F.3d at 1049 (citation and internal quotation marks omitted) (emphasis in original); *see also Batson*, 359 F.3d at 1193. Moreover, it is a permissible inference for the ALJ to conclude that Plaintiff's failure to seek a more aggressive treatment plan after terminating medication due to mild side effects supports an adverse credibility determination. *See, e.g.*, *Tommasetti*, 533 F.3d at 1039 (citing *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "the evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.")). Additionally, Plaintiff's favorable response to conservative treatment is indicative his pain is not as disabling as he contends. Plaintiff bears the burden of showing legal error and has not carried his burden here. *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) (noting that burden of showing error is harmful normally falls on party attacking agency's decision). Accordingly, the Court affirms the ALJ's determination of credibility.

**B. Remand for Benefits or, in the alternative, a New Decision**

Finally, Plaintiff argues that this matter should be remanded for an award of benefits or, in the alternative, a new decision. Having found no legal error and the Commissioner's

decision is supported by substantial evidence in the record, the Court will affirm the Commissioner's decision and need not reach Plaintiff's argument regarding remanding for an award of benefits or a new decision.

**V. Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff was not disabled for purposes of receiving disability insurance benefits was not erroneous. The ALJ properly assessed the evidence and concluded that Plaintiff was capable of performing light work with restrictions.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is kindly directed to terminate this action.

Dated this 7th of January, 2013.

/s/ Lawrence O. Anderson
Lawrence O. Anderson
United States Magistrate Judge